UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **GREENWICH BUSINESS CAPITAL, LLC** <br><br> **Plaintiff** <br><br> v. <br><br> **HIGHMORE GROUP ADVISORS, LLC, doing business as HIGHMORE GROUP; DIPAK JOGIA; GOLENBOCK EISEMAN ASSOR BELL & PESKOE, LLP; MICHAEL S. DEVORKIN: and ELIZABETH C. CONWAY,** <br><br> **Defendants** | **Case No. 1:24-cv-00439** |

**AFFIDAVIT OF JOHN C. PONTE**

I, John C. Ponte, upon oath, depose and say as follows:

1. I am the sole Manager/Member of Plaintiff, Greenwich Business Capital, LLC ("GBC"), a Rhode Island limited liability company, having a current place of business located at 100 Centerville Road, Suite 1, Warwick, Rhode Island. As such, I have personal knowledge of the facts stated herein.

2. GBC was previously a provider of merchant cash advance ("MCA") funding. GBC's business entailed entering into agreements with merchants, which said instruments were more commonly known, and identified, as Purchase & Sale of Future Receipts Agreements (the "MCA Agreements") pursuant to which merchants ("MCA Merchants") would sell a specified percentage of their future accounts receivables to GBC in exchange for GBC advancing a sum certain to and/or for the benefit of the

    MCA Merchants at negotiated purchase price. The MCA Merchants would typically remit a specified percentage of their incoming accounts receivable on a business-day basis.

3. None of GBC's clients are known to the general public, nor are the financial arrangements of the MCA Agreements, except for the information set forth therein, its marketing strategy, and its pricing and cost structures, all of which are highly confidential.

4. Beginning in November, 2020, and continuing through April, 2023, GBC and non-party, BFG 104, LLC ("BFG") entered into a series of transactions governed by two (2) separate "Master Funding Agreements" ("MFAs"), as well as a series of sixty-one (61) corresponding Purchase & Sale Agreements ("PSAs"). Upon information and belief, the MFAs and PSAs (collectively, the "Non-Party Agreements") were all drafted by, edited and/or finalized by BFG's counsel, *to wit*, GEABP.

5. The Non-Party Agreements that may give rights to BFG if there is a determination of a default by GBC are wholly premised upon and subject to the express terms and conditions set forth in GBC's MCA Agreements.

6. The MCA Agreements were prepared in Rhode Island, are governed by Rhode Island law, contain a Rhode Island choice of law provision, all funding is derived from Rhode Island, and all of GBC's merchant collections were settled into GBC's Rhode Island bank account.

7. Upon information and belief, at a December 17, 2024 conference with this Court, counsel for Defendant, Highmore Group Advisors, LLC, doing business as Highmore

Group ("Highmore"), readily acknowledged that Highmore owns and/or controls BFG.

8. Defendants, Golenbock Eiseman Assor Bell & Peskoe, LLP ("GEABP"), Elizabeth C. Conway ("Conway") and Michael S. Devorkin ("Devorkin") (collectively, the "Legal Defendants") were retained to were retained and represent BFG with regard to a dispute between BFG and GBC in the New York Supreme Court (the "New York Action"). Specifically, the basis of the New York Action is that there was an *alleged* breach of all the Non-Party Agreements.

9. Upon information and belief, the Legal Defendants have manufactured a default[1] of all of the Non-Party Agreements. Commencing in or about July, 2023, the Legal Defendants sent out or caused to have communications forwarded to all of GBC's MCA Merchants, which, at that time, was valued at over $17,000,000.00. Beginning with this action, and continuing with the Legal Defendants repeated conduct relative to GBC's Merchants, which remains ongoing to this day, has led to a complete deterioration or erosion of GBC's MCA portfolio.

10. GBC owned all of the MCAs. GBC maintained its rights in the MCAs identified in the Non-Party Agreements. BFG never acquired an absolute right to GBC's MCAs, but only entitled to receive a portion of the receivables.

11. Through this concerted and calculated effort, and subsequent conduct, the Legal Defendants set about to intentionally interfere with the MCA Agreements in order to seek recovery from all of GBC's Merchants, and, further, entirely deprive GBC of its

---

[1] There has never been a judicial determination or ruling in any case, including the New York Action, that GBC has defaulted upon the Non-Party Agreements.

revenue stream, which the Legal Defendants have been successful in accomplishing for nearly twenty (20) months.

12. Upon information and belief, the Legal Defendants have wrongfully collected over $3,200,000.00 from GBC's MCA Merchants, including MCA Merchants to which neither the Legal Defendants, nor their client, were entitled to collect from.

13. For example, the Legal Defendants have directed and/or controlled a campaign to collect from GBC's Merchants that are identified on BFG-GBC Purchase & Sale Agreements ("PSAs") that have been "marked" closed or paid in full by BFG, that are not listed on any Schedule A appended to any PSAs, or that have already been paid in full by GBC. In those instances, the Legal Defendants have diverted and/or misappropriated collections that otherwise belonged and/or otherwise should have gone to GBC.

14. To make matters worse, the Legal Defendants, and/or their client, have failed and/or refused to turn over or return said collections to GBC, the rightful owner of the same. Upon information and belief, this strategy and the implementation thereof has been directed and/or controlled by the Legal Defendants.

15. By way of example, the Legal Defendants have spearheaded a campaign to collect from any number of GBC Merchants for which GBC has overpaid BFG. In so doing, multiple lawsuits have been commenced or initiated in the State of Texas involving certain GBC Merchants, *to wit*, JEPM Electric, LLC, Schroeder-Lauer Funeral Home, LTD. and Top Notch Moving Services, LLC[2], all of which merchants resulted in an

---

[2] As a direct and proximate result of the Legal Defendants' actions, and, more particularly, their tortious interference with GBC's MCA Agreements, GBC has sustained hundred of thousands of dollars in damages as a result of said GBC Merchants' non-performance related to these collection actions.

overpayment by GBC to BFG. Notwithstanding, the Legal Defendants have continued to embark on the improper collection actions, which said collections are premised or based entirely on GBC's Rhode Island MCA Agreements.

16. In so doing, the named Defendants herein have purposefully interfered with GBC's Rhode Island MCA Agreements by, among other things, accessing GBC's confidential client information, and diverting collections that otherwise belong to GBC.

17. Prior to the Legal Defendants' current strategy of suing GBC Merchants. The Legal Defendants formulated and implemented an approach to suing GBC Merchants in the State of Rhode Island. That said, any such action was pursuant to GBC's Rhode Island MCA Agreements.

18. The were seventeen (17) different cases filed in Rhode Island through the Legal Defendants to collect from GBC Merchants that there was no legal entitlement to.

19. The Defendants herein continue to collect from GBC's Merchants that they otherwise are not legally entitled to.

20. Defendant, Michael S. Devorkin ("Devorkin") has made it clear in his communications with GBC's attorneys that the Defendants have not determined which funds being collected by the Defendants are legally the Defendants.

21. The Legal Defendants refuse to release approximately $598,248.94 in collections diverted from GBC, which they that they know are exclusively GBC's funds.

22. Devorkin has communicated to GBC's attorneys that money collected by the Defendants some seventeen (17), or so, months ago was just placed in an escrow account.

23. Upon information and belief, the Legal Defendants have caused or directed to cause the GBC MCA funds collected to be distributed to BFG and Highmore Capital without authorization.

24. This concludes my affidavit.

_____
John C. Ponte, Manager/Member
Greenwich Business Capital, LLC

STATE OF RHODE ISLAND
COUNTY OF KENT

SUBSCRIBED AND SWORN TO
before me this 20th day of December, 2024.

_____
NOTARY PUBLIC
My Commission Expires: 04.09.2026

CHRISTOPHER M. MULHEARN
Notary Public-State of Rhode Island
ID. No. 54667
Commission Expires 4/9/2026