UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| GREENWICH BUSINESS CAPITAL, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HIGHMORE GROUP ADVISORS, LLC; DIPAK JOGIA; GOLENBOCK, EISEMAN, ASSOR, BELL & PESKOE LLP; MICHAEL S. DEVORKIN; and ELIZABETH C. CONWAY <br><br> Defendants. | C.A. No. 1:24-cv-00439 |

ORDER

Mary S. McElroy, United States District Judge.

This case arrived before the Court amid a slew of complex commercial litigation in New York. Before the Court is the defendants' Motion to Dismiss (ECF No. 15) for lack of personal jurisdiction, improper service, improper venue, and forum non conveniens. For the reasons below, the Motion to Dismiss is GRANTED.

The Court briefly summarizes the relevant background, starting with the parties. Plaintiff Greenwich Business Capital ("GBC") is a Rhode Island-based business that provides advanced funding to merchants. (ECF No. 9 ¶¶ 1, 9.) Defendant Highmore Group is a Delaware company with a mailing address in New York; GBC also alleges that it is the majority member of BFG 104 ("104") and Banana Funding Group, LLC ("BFG") (collectively, the "Banana Entities"). Id. ¶ 2;

ECF No. 15-2 ¶ 3. Defendant Dipak Jogia, who resides in Maryland, is Highmore's Managing Member and has served as CEO of the Banana Entities since June 2024. (ECF No. 15-2 ¶ 1, 9–10.) Defendant Golenbock, Eiseman, Assor, Bell & Peskoe, LLP ("GEABP") is a New York-based law firm; defendants Michael Devorkin and Elizabeth Conway are New York-based attorneys who work there and serve as legal counsel to the Banana Entities. (ECF No. 9 ¶¶ 4–6.)

The Banana Entities have a complicated business relationship with GBC. GBC provides merchant cash advance ("MCA") funding to third-party merchants in exchange for future receipts from the merchants. (ECF No. 9 ¶ 11.) The Banana Entities, in turn, give GBC funds for their MCAs in exchange for merchants' receipts. *Id.* The Banana Entities and GBC operate through two "Master Funding Agreements" and dozens of "Purchase and Sale Agreements." *Id.* ¶ 12. These documents govern payment terms, schedules, and other collection rights associated with the receipts. *See, e.g.*, *id.* ¶¶ 13, 15, 22.

Three suits are central to understanding this case. First, in May 2023, BFG allegedly discovered fraud in its arrangement with GBC, so it sued GBC in New York state court. (ECF No. 15-5, Ex. B.) BFG sought, and the court granted, a preliminary injunction restraining GBC from limiting BFG's attempt to collect payments that GBC-affiliated merchants purportedly owed. (ECF No. 15-5, Ex. E.) Second, in October 2023, GBC turned around and sued BFG, several affiliates, and its collections agent in New York state court, alleging seventeen causes of action largely related to the first suit. (ECF No. 15-5, Ex. H.)

2

In November 2023, GBC filed a third case: another suit against BFG and affiliates. The twist? This time, it was in Rhode Island state court. (ECF No. 15-5, Ex. I.) Only weeks later, however, the first New York state court—the one hearing BFG's initial case against GBC—enjoined GBC from prosecuting the Rhode Island case. (ECF No. 15-5, Ex. K.) The New York court held that GBC's Rhode Island case was improperly "duplicative" of both ongoing New York suits, because they involved "the same Agreements, people, entities, and events." *Id.* at 202.[1]

Undeterred, GBC next filed suit in this Court against new parties, including Highmore, Mr. Jorgia, GEABP, Mr. Devorkin, and Ms. Conway. (ECF No. 9.) It asserts twelve counts, including breach of contract, tortious interference with contract, and civil racketeering. Despite the addition of different parties, the Complaint largely details GBC's gripes with the Banana Entities—who are not party to this litigation—centering on the fallout from the 2020 and 2022 MFAs. *Compare* ECF No. 9 ¶ 12 *with* No. 15-5, Ex. H (GBC's N.Y. Comp.), ¶ 40 *and* No. 15-5, Ex. I (GBC's first R.I. Comp.), ¶ 19. The central allegation is that the defendants, independently and through the Banana Entities, "engaged in a concerted campaign, which continues to this day, to attack any and all of GBC's MCA merchants and [to] attempt to collect whatever amounts they could without ever providing any reconciliation or accounting." (ECF No. 9 ¶ 35.) As the Court reads it, the Complaint

---

[1] The Rhode Island Superior Court recently dismissed the Rhode Island case without prejudice based on improper venue. *Greenwich Bus. Capital, LLC, v. Desrosiers*, C.A. No. KC-2023-1056, 2024 WL 5047396, at *7 (R.I. Super. Dec. 6, 2024).

consists largely of allegations concerning the defendants' conduct and litigation in New York. *See, e.g., id.* ¶¶ 29, 31, 35, 42, 46, 51–52, 69, 75, 87, 89. Aside from establishing that GBC is a Rhode Island-based company, the only reference to Rhode Island in the Complaint is its laws' congruence with New York law, which governs the agreements. *Id.* ¶ 39.

The defendants collectively move to dismiss on several grounds, including lack of personal jurisdiction, improper service, improper venue, and forum non conveniens. (ECF No. 15.) The Court's analysis starts and ends with personal jurisdiction.

When challenged, the plaintiff must show that the Court can exercise personal jurisdiction over an out-of-state defendant. *Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 51 (1st Cir. 2020). And when a party challenges personal jurisdiction through a Rule 12(b)(2) motion and the Court has not held an evidentiary hearing, it applies the prima facie standard. *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 121 (1st Cir. 2022); *see Adelson v. Hananel*, 510 F.3d 43, 48 (1st Cir. 2007) (referring to this method as the "prima facie evidentiary standard"). Under this standard, the Court "acts not as a factfinder, but as a data collector" in determining "whether the plaintiff has proffered facts that, if credited, would support all findings essential to personal jurisdiction." *Chen*, 956 F.3d at 51 (cleaned up).

So GBC must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). To make that showing, GBC

must "go beyond the pleadings and make affirmative proof." *United Elec. Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp.*, 987 F.2d 39, 44 (1st Cir. 1993). It cannot meet its burden on mere "conclusory averments" but must "adduce evidence of specific facts." *Chen*, 956 F.3d at 53 (internal citation omitted). This includes "facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." *Baskin-Robbins*, 825 F.3d at 34. The Court may also "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." *Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998). Finally, the Court does not "credit conclusory allegations or draw farfetched inferences." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024) (internal quotation omitted).

Here, subject-matter jurisdiction is based on diversity. (ECF No. 9 ¶ 7.) The Court thus acts as "the functional equivalent of a state court sitting in the forum state." *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009). To exercise personal jurisdiction over the defendants, the Court must determine that their "contacts with the state satisfy both the state's long-arm statute as well as the Due Process Clause of the Fourteenth Amendment." *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 258 (1st Cir. 2022). Rhode Island's long-arm statute, R.I. Gen. Laws § 9-5-33, is "coextensive" with the Due Process Clause, meaning the constitutional analysis controls. *Astro-Med*, 591 F.3d at 8–9.

The constitutional standard is a familiar one. To satisfy the Due Process Clause, the defendants must "have certain minimum contacts with [Rhode Island] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citation omitted). "As long as due process concerns are satisfied, a federal court may exercise either general or specific jurisdiction over a defendant." *Chen*, 956 F.3d at 55 (cleaned up).

General jurisdiction typically exists only at an individual's domicile or a corporation's place of incorporation and/or its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The Court lacks general jurisdiction over any of the defendants. GEABP, Mr. Devorkin, and Ms. Conway operate out of New York. (ECF No. 9 ¶¶ 4–6.) Highmore was incorporated in Delaware, and it maintains only a mailing address in New York. *Id.* ¶ 2; ECF No. 15-2 ¶ 3. Similarly, Mr. Jorgia lives in Maryland. (ECF No. 15-2 ¶ 10). And nothing suggests that this is an exceptional case where nonetheless general jurisdiction is proper because the defendants' business operations and state contacts are so substantial and of such a nature as to render them "at home" in Rhode Island. *See Chen*, 956 F.3d at 47.

That leaves specific jurisdiction. For specific jurisdiction to attach, the defendants must "purposefully avail" themselves of the forum state and GBC's claims "must arise out of or relate to [the defendants'] contacts with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotations

6

omitted). Courts in the First Circuit use a three-part test to determine when specific personal jurisdiction arises:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must ... be reasonable.

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016). In short, the specific jurisdiction analysis has three components: "relatedness, purposeful availment, and reasonableness." *Motus*, 23 F.4th at 122. "Failure to make any one of these showings dooms any effort to establish specific personal jurisdiction." *Scottsdale Cap. Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 20 (1st Cir. 2018).

The purposeful availment inquiry is dispositive here. "Under the purposeful availment requirement, there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 96 (1st Cir. 2024) (cleaned up). The inquiry focuses "on the defendant's intentionality," and it "rests on two cornerstones: voluntariness and foreseeability." *Id.* (internal citations omitted). "Achieving voluntariness demands that the defendant's contacts with the forum result proximately from its own actions." *Chen*, 956 F.3d at 59. Achieving foreseeability demands that "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Id.* (internal citations omitted).

7

The Complaint's allegations are insufficient to establish any defendants' purposeful availment. As explained, the Complaint consists primarily of allegations about the defendants' conduct and litigation in New York. *See, e.g.*, ECF No. 9 ¶¶ 29, 31, 35, 42, 46, 51–52, 69, 75, 87, 89. And the only reference to Rhode Island in the Complaint is its congruence with New York law, which governs interpretation of the agreements. *Id.* ¶ 39.

To bolster its argument, GBC provides an affidavit from its manager, John Ponte. (ECF No. 21-2.) Mr. Ponte makes two main Rhode Island connections. First, he notes that the MCAs, the contracts between GBC and its affiliated merchants, were drafted and executed in Rhode Island. *Id.* ¶ 6. Second, he claims upon "information and belief" that the defendants have embarked on "improper collection actions" and thus "purposefully interfered" with GBC's relationships with its Rhode Island-based merchants. *Id.* ¶ 12, 14, 16–17. Somewhat more specifically, he explains that the defendants "formulated and implemented" a campaign to sue GBC-affiliated, Rhode Island-based merchants in violation of the agreements. *Id.* ¶ 17. Seventeen cases have been filed "through the Legal Defendants" here to collect from GBC's merchants. *Id.* ¶ 17–18. GBC submits that this set of cases and the legwork that went into them establish purposeful availment for everyone.

The Court disagrees. Starting with GEABP, Mr. Devorkin, and Ms. Conway, the Court cannot find "a shred of evidence in the present record" to establish their availment beyond Mr. Ponte's affidavit. *Rosenthal*, 101 F.4th at 98. And in response to GBC's affidavit, they provide several of their own, explaining (1) that those cases

"were filed by attorneys who do not work for GEABP," (2) that "neither Devorkin nor Conway caused such suits to be brought," and (3) that none of them were otherwise involved in the suits. (ECF No. 22 at 21.) Their point is that no credible allegations show that GEABP, Mr. Devorkin, or Ms. Conway "took action in connection with those suits." *Id.*

It is true that with the prima facie standard, the plaintiff typically has an edge. But recall the First Circuit's repeated caveats: the Court must at this stage "accept the plaintiff's (properly documented) evidentiary proffers as true." *Hannon v. Beard*, 524 F.3d 275, 279 (1st Cir. 2008). Yet plaintiffs "may not rely on unsupported allegations in their pleadings" and instead are "obliged to adduce evidence of specific facts." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 117, 134 (1st Cir. 2020). Further, jurisdictional facts should only be "adduced by means of an affidavit made by a person" who "has adequate knowledge of the situation." *Chen*, 956 F.3d at 56. Nor can the Court "credit conclusory allegations or draw farfetched inferences." *Rosenthal*, 101 F.4th at 95.

Mr. Ponte's affidavit fails on all fronts. The facts surrounding the defendants' alleged tortious litigation campaign are not "properly documented," as required. *Hannon*, 524 F.3d at 279. GBC just provided a list of case names—without any citation—none of which show (1) that Highmore or Jogia is a party or (2) that GEABP, Ms. Conway, or Mr. Devorkin are involved as counsel. (ECF No. 21-1 at 15.) Mr. Ponte's general statements on the question, based only on "information and belief," are not an adequate substitute for proper documentation of judicial proceedings,

9

particularly when held against sworn testimony of the attorneys specifically stating that they are uninvolved in the cases. *Compare* ECF No. 21-2 (Ponte Aff.) ¶ 14–18 *with* ECF No. 21-3 (Conway Aff.) ¶ 9 *and* ECF No. 21-4 (Devorkin Aff.) ¶ 49–53. Nor, despite broad statements in GBC's briefs about "a string of hundreds of communications directed by the Legal Defendants" to GBC-affiliated merchants, does GBC provide a single piece of specific evidence of any defendants' contacts—more evidence that can presumably be produced without any discovery, given GBC's ongoing business relationships with these merchants. (ECF No. 21-2 at 23.)

The Court also struggles to see how Mr. Ponte, GBC's manager, has "adequate knowledge" of any alleged behind-the-scenes legal chicanery, especially if GEABP, Mr. Devorkin, and Ms. Conway are not counsel in the seventeen cases. *Chen*, 956 F.3d at 56. Instead, these allegations seem to fall into the "conclusory" bucket, particularly in light of Mr. Devorkin and Ms. Conway's sworn testimony that they are uninvolved. *Rosenthal*, 101 F.4th at 95; ECF No. 21-3 (Conway Aff.) ¶ 9 and ECF No. 21-4 (Devorkin Aff.) ¶ 49–53. GBC essentially asks this Court to conclude that Ms. Conway and Mr. Devorkin perjured themselves (and risked their bar licenses) just to deny their involvement in the seventeen cases that otherwise might serve as the foundation for personal jurisdiction. That conclusion is quintessentially "farfetched," especially given how easily verifiable their involvement would be. *Rosenthal*, 101 F.4th at 95. Accordingly, the Court holds that GBC failed to meet its burden of showing that Mr. Devorkin, Ms. Conway, and GEABP availed themselves of Rhode Island.

10

The case is similarly clear for Highmore and Mr. Jogia.  As to Highmore, Mr. Jogia testifies that it "is not now and has never been a member or owner" of the Banana Entities "or exercised dominion and control over these entities," so it could not have been involved in the manner that GBC alleges.  (ECF No. 15-2 ¶ 4.)  The Complaint vaguely claims otherwise (ECF No. 9 ¶ 2), and Mr. Ponte's affidavit just repeats that statement, only relying "upon information and belief" about an off-the-record statement Highmore's counsel purportedly made to this Court during a conference on December 17, 2024, to justify it.  (ECF No. 21-2 ¶ 7).  But for the same reasons as described above, the affidavit is insufficient.  *Chen*, 956 F.3d at 56.  And either way, the Court sees no specific facts linking Highmore—a Delaware company with a New York mailing address—to Rhode Island in relation to any of the claims asserted.  It is not party to any merchant-based litigation, nor was it party to any of the agreements that formed the basis for those suits.  GBC has thus failed to meet its burden here.

That leaves Mr. Jogia.  The First Circuit has made clear that, when a plaintiff sues both a corporation and its officers, there "must be some independent basis for obtaining jurisdiction over the individual corporate officers." *Alvarado-Morales v. Digit. Equip. Corp.*, 843 F.2d 613, 617 (1st Cir. 1988).  Here, even assuming personal jurisdiction over Highmore, there is not over Mr. Jogia.  No allegations in the Complaint specify Mr. Jogia's wrongdoing, and his relationship with the BFG entities in 2024 seemed to begin after almost every Rhode Island case against a GBC-affiliated merchant had been filed.  (ECF No. 15-2 ¶ 9.)  With no involvement in the

11

lawsuits, there is not a colorable argument that he independently purposefully availed himself of Rhode Island, particularly in a way that comports with the voluntariness and foreseeability requirements.

Because GBC failed to establish any defendants' purposeful availment of Rhode Island, the Court "need go no further" in the personal jurisdiction analysis. *Rosenthal*, 101 F.4th at 90.

Lastly, the Court addresses jurisdictional discovery. "A diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001). But "that entitlement is not absolute," and the Court has "broad discretion to decide whether discovery is required." *Id.* at 626 (internal quotations omitted).

GBC seeks "five depositions," an "accounting and source of the funds that the defendants have collected according to GBC's MCAs with its Merchants, and proof that all the funds are secure and held in escrow." (ECF No. 21-1 at 24.) But it did not explain how those five depositions, the accounting, and the proof of escrow will salvage an argument for personal jurisdiction; it did not even explain who it wanted to depose—only vaguely gesturing to the possibility of deposing Ms. Conway and Mr. Devorkin— or what those depositions might reveal. Given "the overall unpersuasive case for personal jurisdiction," as well as GBC's "failure to allege specific contacts it

12

was seeking to discover," the Court finds that GBC is not entitled to jurisdictional discovery. *Swiss Am. Bank*, 274 F.3d at 626.

The defendants' Motion to Dismiss (ECF No. 15) is GRANTED. Because this dismissal is made on jurisdictional grounds, it is made without prejudice.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge

February 24, 2025